IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:25-cv-00253

| | |
|---|---|
| JONATHAN COOKE, CHARLES FARRIOR, TERRY HARRIS, DESTINEE KITTRELL, DELORES KITTRELL, DAVANNA JOHNSON, CHUTNEY NANCE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF RALEIGH, Detective OMAR I. ABDULLAH and Detective RISHAR PIERRE MONROE, in their individual and official capacities, <br><br> Defendants. | **NOTICE OF REMOVAL** |

# Exhibit 2

## *State Court Complaint*

STATE OF NORTH CAROLINA
COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NUMBER: __25CV009765-910__

JONATHAN COOKE, CHARLES FARRIOR, )
TERRY HARRIS, DESTINEE KITTRELL, )
DELORES KITTRELL, DAVANNA JOHNSON )
CHUTNEY NANCE )
                                    )
           Plaintiffs, )
                                    )
v.                                    )
CITY OF RALEIGH, Detective OMAR I. ABDULLAH )
and Detective RISHAR PIERRE MONROE, in their )
individual and official capacities, )
                                    )
                                    )
          Defendants. )
                                    )
                                    )

**<u>COMPLAINT</u>**
**(Jury Trial Demanded)**

Electronically Filed Date: 3/19/2025 10:59 AM Wake County Clerk of Superior Court

NOW COME the Plaintiffs Jonathan Cooke, Charles Farrior, Terry Harris, Destinee Kittrell, Delores Kittrell, DaVanna Johnson and Chutney Nance, by and through their undersigned counsel, complaining of the acts of Defendants the City of Raleigh, and Detectives Omar I. Abdullah and R.P. Monroe allege and state as follows:

## PARTIES, JURISDICTION AND VENUE

Plaintiffs bring this action seeking legal and equitable relief and the amount in controversy exceeds ($25,000). Plaintiff seeks damages in excess of ($25,000).

1. Plaintiff Jonathan Cooke, (hereinafter "Plaintiffs and/or Mr. Cooke") is presently a citizen and resident of Wake County, North Carolina.

2. Plaintiff Charles Farrior, (hereinafter "Plaintiffs and/or Mr. Farrior") is presently a citizen and resident of Wake County, North Carolina.

3. Plaintiff Terry Harris, (hereinafter "Plaintiffs and/or Mr. Harris") is presently a citizen and resident of Wake County, North Carolina.

4. Plaintiff Destinee Kittrell, (hereinafter "Plaintiffs and/or Ms. Kittrell") is presently a citizen and resident of Wake County, North Carolina.

5. Plaintiff Delores Kittell, (hereinafter "Plaintiffs and/or Ms. De. Kittrell") is presently a citizen and resident of Wake County, North Carolina.

6. Plaintiff DaVanna Johnson, (hereinafter "Plaintiffs and/or Ms. Johnson") is presently a citizen and resident of Wake County, North Carolina.

7. Plaintiff Chutney Nance, (hereinafter "Plaintiffs and/or Ms. Nance") is presently a citizen and resident of Wake County, North Carolina.

8. Defendant City of Raleigh (the "City") is a municipal corporation organized by charter under

2

Chapter 160A of the North Carolina General Statutes. It maintains and operates the Raleigh Police Department ("RPD"). Employees of RPD are employees and agents of the City, which bears legal responsibility under state law for negligent acts and omissions of RPD in the course of their employment. The City is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9. Further, on information and belief, the City of Raleigh, at the time of the wrongful arrests, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 153A-435, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the City and its agents for any judgment against it or its agents named in this action.

10. All Individual Defendant RPD Officers, listed below, are entitled to indemnification by the City of Raleigh under North Carolina law for any liability arising from conduct described herein.

11. Detective Omar I. Abdullah is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

12. Detective Rishar Pierre Monroe is a police officer employed by the Raleigh Police Department, being sued in his official and individual capacity.

13. Separate and apart from any waiver of immunity as a result of insurance, Defendants' "immunity," if asserted, is otherwise waived or pierced to the extent Defendants, individually or severally, violated Plaintiffs' federal civil rights, and/or acted corruptly, maliciously, or were grossly negligent and recklessly indifferent to the established rights of Plaintiffs and other African American citizens. Specifically,

3

Plaintiffs allege that Defendants: wantonly did that which a person of reasonable intelligence would know to be contrary to that person's duty, and which that person would reasonably foresee could cause injury or damage.

14. Plaintiffs bring this action, in part, pursuant to 42 U.S.C. § 1983 and § 1985 and the Fourth and Fourteenth Amendments to the United States Constitution.

15. The unlawful acts complained of occurred in Wake County in so venue is proper in this venue based on N.C. Gen. Stat. § 1-82.

16. This Court has personal and subject matter jurisdiction over this action and the parties of the dispute pursuant to N.C. Gen. Stat. § 7A-240.

17. This action is being filed within the timeframes as prescribed by N.C. Gen. Stat. § 1-51 (3) and are therefore timely.

18. Plaintiffs respectfully demand a trial by jury of all issues in this matter.

## FACTUAL ALLEGATIONS

19. In the fall of 2018 Raleigh Police Department ("RPD") Officers arrested a target they suspected of selling cocaine.

20. This target was arrested using a confidential informant employed by the RPD.

21. The target sold the confidential informant crushed aspirin and claimed it was cocaine.

22. The target was arrested and charged with selling fake drugs.

23. After his arrest, RPD Officer Omar Abdullah ("Abdullah") recruited the target to work as a confidential informant with the RPD VICE squad.

24. Officer Abdullah nicknamed the confidential informant Aspirin because he had sold them aspirin he claimed was cocaine.

25. On August 16, 2019, Aspirin was approved to work as a confidential informant for the RPD.

4

26. Aspirin was homeless at the time of his arrest and agreed to be a confidential informant to work off his pending criminal charges and to make money.

27. He initially reported to Officer Abdullah and completed a few controlled drug buys arranged by him.

28. Officer Abdullah provided him pre-marked United States currency.

29. Aspirin bought crack valued at less than $100.

30. Upon information and belief, after Aspirin complained about his pay and Detective Abdullah told him he could make more money if he brought in bigger cases.

31. Detective Abdullah, Aspirin, and the other individual officers, conspired to fabricate Heroin charges against at least 15 individuals.

32. Aspirin with the knowledge and assistance of Abdullah hid fake heroin on his body before each alleged buy.

33. Abdullah claimed he searched Aspirin before each alleged buy and never located any contraband on his person.

34. Aspirin would shield his undercover camera, in violation of RPD procedure, with his jacket so the alleged buy would not be recorded.

35. After each controlled buy, Aspirin provided Detective Abdullah with fake heroin allegedly purchased from individuals, including a Keith Green.

36. Abdullah, against RPD procedure, met alone with Aspirin, before and after buys.

37. Abdullah always paid Aspirin—also in violation of RPD procedure—without any other officers present.

38. Upon information and belief RPD Detective Monroe informed Abdullah on numerous occasions that the alleged drugs were not heroin but brown sugar.

5

39. Upon information and belief RPD Detective Monroe informed Abdullah that the alleged drugs were not packaged the same way as heroin.

40. Upon information and belief RPD officers occasionally conducted field tests on the fake heroin—immediately after the alleged buy from Plaintiffs—and each time it tested negative for a controlled substance.

41. Even faced with a negative field test results and other officers' observations that the alleged heroin was brown sugar, Detective Abdullah still charged individuals, including a Keith Green with trafficking heroin.

42.  Detective Abdullah and other officers often failed to submit the alleged heroin for lab testing until weeks or months after these individuals including Keith Greens' incarceration.

43. In each case the City County Bureau of Identification ("CCBI") Lab reported that the alleged heroin tested negative and was not a controlled substance.

44. Defendants continued to use Aspirin as a CI even after he repeatedly planted fake heroin and fabricated heroin buys.

45. Defendants failed to, or severally delayed, informing the Wake County District Attorney ("DA") or the Court about the negative CCBI tests.

46. Defendants failed to inform the DA or the Court about the negative field tests.

47. Defendants failed to inform the DA or the Court that they believed the alleged heroin was actually brown sugar, or about the unreliability of Aspirin.

48. Through this scheme, Defendants fabricated heroin trafficking charges against individuals, including Keith Green, all people of color.

49. RPD officers including Detective Monroe, reported Abdullah's ongoing scheme to RPD Sergeant Rolfe and Lt. Bunch but neither supervisor intervened to stop the false arrests and

6

prosecutions.

50. Upon information and belief RPD Officers William Rolfe, Rishar Pierre Monroe, Julien David Rattelade, Meghan Caroline Gay, David Chadwick Nance, Jason Gwinn, and Lieutenant Jennings Bunch were aware of Abdullah's scheme and failed to intervene to prevent these false arrests and the wrongful incarceration of plaintiffs.

51. On March 17, 2020, Keith Green was arrested for allegedly selling heroin to the confidential informant Aspirin.

52. Abdullah falsely claimed Green sold Aspirin 8.5 grams of heroin.

53. RPD Officers Gwinn and Rattelade were present during this arrest.

54. RPD Officer Gwinn stated the alleged heroin looked like brown sugar.

55. RPD Officer Rattelade conducted a field test, confirmed the alleged heroin tested negative for a controlled substance, and reported these results to Detective Abdullah.

56. Even with the negative field test, Green was charged with trafficking heroin and his bond was set at $250,000.

57. The CCBI lab reported that the alleged heroin tested negative for a controlled substance.

58. On or about July 30, 2020, all charges against Green were dismissed and he was released from custody.

59. On March 19, 2020, Detective Abdullah prepared and obtained a Search Warrant regarding Keith Green to search a premises he was allegedly residing at 5009 Royal Acres Road, Raleigh, NC 27601. This Warrant was obtained under the pretenses that this house was a dwelling for the purpose of narcotics, possession of narcotics with the intent to sell and/or deliver illegal controlled substances, the possession of controlled substances and possession of drug paraphernalia. (See Exhibit 1 – Abdullah Search Warrant)

7

60. On March 19, 2020, Detective Monroe prepared and obtained a Search Warrant to search a premises located at 5029 Royal Acres Road, Raleigh, NC 27601. This Warrant was obtained under the pretenses that this house was a dwelling for the purpose of narcotics, possession of narcotics with the intent to sell and/or deliver illegal controlled substances, the possession of controlled substances and possession of drug paraphernalia. (See Exhibit 2 – Monroe Search Warrant).

61. The Plaintiffs in the instant case were the victims of illegal conduct on the part of Defendants Abdullah and Monroe and the City of Raleigh due to their alleged connection to Keith Green.

62. Defendants Abdullah and Monroe had a duty to prevent or to aid in preventing the assault, false arrest, intimidation of the Plaintiffs, and the denial of their basic rights to be free from unlawful, search, seizure, confinement or arrest, and to enjoy the established rights of liberty and due process of law of which deprivations they or each of them individually, had knowledge were about to occur and had the power Othe Plaintiffs of their civil rights and privileges as citizens of the United States.

### JONATHAN COOKE

63. On March 19, 2020 Jonathan Cooke arrived in the evening at the residence of 5009 Royal Oaks Drive, Raleigh NC after leaving an Outback Restaurant in Garner, NC.

64. He arrived with Plaintiff Terry Harris and pulled up and went inside with Plaintiff Charles Farrior.

65. They were waiting for Plaintiff Destinee Kittrell and her mother Delores Kittrell and other family members to bring food in preparation for a cookout.

66. Approximately 10 minutes later they heard a loud bang followed by another one.

67. Out of fear, they began to run away from the house due the loud sound they feared for their

8

lives. Jonathan Cooke had been previously shot through his upper left torso and he only has half a lung and bullet fragment in his heart.

68. The SWAT team came into the house aggressively and ran them down in the woods behind the house.

69. The RPD removed $5,600 off of his person. He is a car dealer and a portion of the money belonged to a customer, but the RPD officers assumed it was drug money.

70. He along with others were taken into the back room one by one where they were strip searched and cavity searched by the RPD officers.

71. He was there for a cookout with family and friends and was illegally abused, humiliated, forcibly and physically restrained, handcuffed, and placed in the back of a police car and mistreated at the hands of the RPD and their illegal search and detention of Jonathan Cooke and others present.

72. He was released from custody that same evening and all charges were dismissed.

73. However, he continues to endure pain and suffering from the humiliation of the event and the treatment received by the actions of RPD.

74. While at the precinct, the officers kept questioning him and others about heroin and the whereabouts of his cousin Keith Green. The officers became angry because they had no knowledge of his whereabouts.

75. Jonathan Cooke suffered from extreme weight loss and difficulty explaining this incident to his teenage son why this took place at a family function. He believes they were targeted due to his race.

***CHARLES FARRIOR***

76. On March 19, 2020 Plaintiffs Charles Farrior, Terry Harris and Jonathan Cooke were

9

located at the residence at 5009 Royal Oaks Acres in Raleigh NC to attend a cookout with friends and family members.

77. While waiting for the women to return to the house with the groceries for the cookout, Farrior along with the others experienced a loud bang against the house, followed immediately by another loud bang.

78. Due the extreme nature of the sound and being startled they began to run out the back of the house.

79. The police then announced themselves and proceeded to corral the crowd into the house and handcuffed everyone.

80. They indicated that they had a warrant for a Keith Green and they began to search the house.

81. The police indicated that they found some weed in the woods and charged them all for the alleged offense.

82. The police also searched Mr. Farrior's car before taking him and the others to the police precinct for booking and arrest.

83. He along with others were taken into the back room one by one where they were strip searched and cavity searched by the RPD officers.

84. He was there for a cookout with family and friends and was illegally abused, humiliated, forcibly and physically restrained, handcuffed, and placed in the back of a police car and mistreated at the hands of the RPD and their illegal search and detention of Charles Farrior and others present.

85. He was released from custody that same evening and all charges were dismissed.

86. However, he continues to endure pain and suffering from the humiliation of the event and the treatment received by the actions of RPD.

10

*TERRY HARRIS*

87. On March 19, 2020 Plaintiffs Terry Harris, Charles Farrior, and Jonathan Cooke were located at the residence at 5009 Royal Oaks Acres in Raleigh NC to attend a cookout with friends and family members.

88. While waiting for the women to return to the house with the groceries for the cookout, Harris along with the others experienced a loud bang against the house, followed immediately by another loud bang.

89. Due the extreme nature of the sound and being startled they began to run out the back of the house.

90. The police then announced themselves and proceeded to corral the crowd into the house and handcuffed everyone.

91. They indicated that they had a warrant for a Keith Green and they began to search the house.

92. The police indicated that they found some weed in the woods and charged them all for the alleged offense.

93. The police took money from Mr. Harris before taking him and the others to the police precinct for booking and arrest.

94. He along with others were taken into the back room one by one where they were strip searched and cavity searched by the RPD officers.

95. He was there for a cookout with family and friends and was illegally abused, humiliated, forcibly and physically restrained, handcuffed, placed in the back of a police car and mistreated at the hands of the RPD and their illegal search and detention of Terry Harris and others present.

96. He was released from custody that same evening and all charges were dismissed.

11

97.     However, he continues to endure pain and suffering from the humiliation of the event and the treatment received by the actions of RPD.

***DESTINEE KITTRELL***

98.     On March 19, 2020 Destinee Kittrell was attending a cookout at 5009 Royal Oaks Acres with her son Dy'Karius Cooke and his father Jonathan Cooke.

99.     Ms. Kittrell went to a Food Lion and purchased food and came back to the house along with her mother Delores Kittrell and her sister DaVanna Johnson.

100.    The Plaintiffs were walking back to the cars getting ready to leave when all of a sudden, the police started screaming at us, got us on the ground and Ms. Kittell instantly starting shaking and crying because she was terrified.

101.    The police was running up to them with assault rifles pointed at them and telling them to lay face down.

102.    Ms. Kittell and her sister were so scared but did everything asked of them. However, the officers were very nasty and rude to them. She asked the officer if she could lay on her side because she suffers from a genetic disease called Fabry and it makes her stomach hurt to lay directly on her stomach and the officer stood over them with his gun still pointed at her and yelled in the nastiest way " SHUT UP AND DONT MOVE!" so she did just that.

103.    Plaintiff DaVanna Johnson told the officer their mom was in the car sleeping. One of the officers began knocking on the car window with his gun and woke her up and got her out the car. He made her get down on the ground. The police handcuffed the three of them and took them inside the house and sat them down on the floor up against the wall in the living room.

104.    Once they had everyone handcuffed the detective said, " We have a search warrant for this residence!" And then they began to search the house and then they asked for everyone car

12

keys to search all the cars.

105. The female detective called Ms. Kittrell in one of the rooms in the house and began to ask her questions about her job, why she was bringing the groceries, and if she knew who Keith Green was. She answered honestly but was still trying to process what was going on.

106. Ms. Kittrell asked the officer what was going on and she didn't answer her. The officer made her take her clothes off and turn around with her naked butt to have her squat and cough. This caused Ms. Kittrell extreme humiliation, embarrassment and violated.

107. The officer was very blunt and rude. She also strip searched her mother Delores Kittrell and her sister DaVanna Johnson. They sat them back down and called for the "wagon" to take them to the police precinct.

108. Everyone went to the police precinct except for Delores Kittrell and Destinee Kittrell The police loaded up who was going with them and the detective said " we are done here" he threw the search warrant (which he kept in his hand the entire time of the raid) on the floor beside the front door and the walked out.

109. Ms. Kittell and her mother were too scared to move. They called out for an officer to come in and when he did, we asked if they could leave and he said yes. As they were leaving the house the detective was still standing in the driveway and he asked me what her real name was and she answered him correctly and he called her a liar and asked her mom Delores Kittrell what her real name was. Destinee Kittrell was confused because the officer searched the car and got her license out of the car.

110. Ms. Kittell locked and closed the doors and cut the lights off before leaving. She suffers from PTSD and from chronic depression. She had never been treated so badly like this in her life and still has nightmares about this episode. The RPD should have better training and how to

13

talk to people with RESPECT. As a mother she not only had to deal with her feelings, dreams and thoughts but those of her son Dy'Karius Cooke.

### *DELORES KITTRELL*

111. On March 19, 2020 Delores Kittrell received a call from her grandson Dy'Karius Cooke about attending a cookout at 5009 Royal Oaks Acres.

112. Ms. Delores Kittrell went to a Food Lion and purchased food and came back to the house along with her daughters Destinee Kittrell and DaVanna Johnson.

113. Ms. Delores Kittrell fell asleep in the car because her legs were hurting her and remained in the car while her daughters took the food inside the house.

114. The Plaintiffs were walking back to the cars getting ready to leave when all of a sudden, the police started screaming at us, pointed guns at them and got everyone on the ground. Her daughters asked them not to put Delores Kittrell on the ground due to her medical condition. However a police officer came up the car and made her get out the vehicle and get on the ground despite being asked not to do so.

115. The police was running up to them with assault rifles pointed at them and telling them to lay face down.

116. The police handcuffed the three of them and took them inside the house and sat them down on the floor up against the wall in the living room.

117. Once they had everyone handcuffed the detective said, " We have a search warrant for this residence!" And then they began to search the house and then they asked for everyone car keys to search all the cars.

118. The female detective called Ms. Kittrell in one of the rooms in the house and began to ask her questions about her job, why she was bringing the groceries, and if she knew who Keith

14

Green was. She answered honestly but was still trying to process what was going on.

119. Ms. Kittrell asked the officer what was going on and she didn't answer her. The officer made her take her clothes off and turn around with her naked butt to have her squat and cough. This caused Ms. Kittrell extreme humiliation, embarrassment and violated.

120. The officer was very blunt and rude. She also strip searched her mother Delores Kittrell and her sister DaVanna Johnson. They sat them back down and called for the "wagon" to take them to the police precinct.

121. Everyone went to the police precinct except for Delores Kittrell and Destinee Kittrell. The police loaded up who was going with them and the detective said " we are done here" he threw the search warrant (which he kept in his hand the entire time of the raid) on the floor beside the front door and the walked out.

122. Ms. Kittell and her mother were too scared to move. They called out for an officer to come in and when he did, we asked if they could leave and he said yes. As they were leaving the house the detective was still standing in the driveway and he asked me what her real name was and she answered him correctly and he called her a liar and asked her mom Delores Kittrell what her real name was.

123. Ms. Kittell locked and closed the doors and cut the lights off before leaving. She had never been treated so badly like this in her life and still has nightmares about this episode. The RPD should have better training and how to talk to people with RESPECT.

124. Ms. Kittrell still does not understand what was going on and why she and her adult daughters had to be strip searched regarding someone named Keith Green and having a gun drawn on her in the process. She suffers from knee pain and went through excruciating pain having to squat and strip in front of the officers.

15

*DAVANNA JACKSON*

125. On March 19, 2020, Plaintiff DaVanna Jackson ended a 12-hour shift and proceeded to meet her mother to pick up some groceries while she was working a long shift and in school full-time.

126. Ms. Jackson was at the residence located at 5009 River Oaks Acres in Raleigh and was in the process of putting food in her car and was met with machine guns drawn and forced to the ground face down.

127. Through actively serving in the military, deployments and training, she had never been treated in such a manner.

128. She informed one of the officers that her mother previously had knee and back surgery and asked that they not force her to the ground like the others. The officer disregarded the request and began to knock on the car window with the weapon and made her mother exit the vehicle and get on the ground as well.

129. Ms. Jackson and the others were instructed to go inside the home and sit on the cold hard floor. Then she was forced into a back room to be strip searched which she had never encountered before in her life.

130. She felt so disgusting and was made to squat while naked and was severely traumatized by this event. Because particles from the ground were all over her clothing and an officer saw this, she was asked if it were drugs falling from her clothes despite never having used drugs in her life.

131. After being stripped searched she was asked to step outside to her vehicle. She was asked about drugs and noticed her car was in disarray. It had been torn apart. None of the other vehicles had been touched.

16

132. Inside her car she carried her Conceal to Carry Permit, military ID, drivers license and vehicle registration. She was told at some point drugs had been in her car, which was a blatant lie.

133. She was told that she needed to be taken in for questioning along with 3 other persons and was loaded into a plain white van and taken to a police precinct.

134. Ms. Jackson was placed into an empty room and sat waiting alone for hours while the detective "figured out who she was."

135. The detective asked her who Kenneth Green was, and she indicated that she never heard the name before. He then proceeded to threaten her with a form to waive her rights to an attorney.

136. He told her that her name did not exist as if it's possible to work for the government if I didn't exist. Ms. Jackson told him that she had just finished an assignment the Office of Special Investigations/NCIS in Quantico, VA.

137. He asked for the number and how he could contact them. She provided him with a number to call. The detective became frustrated and began to yell uncontrollably once he realized that she did not know Kenneth Green and all her information was correct.

138. The detective then questioned her about her life and accomplishments to change the direction of the conversation. He left the room and after another 2 hours, another officer came into the room with her driver's license and told her they would drive her back home.

139. Upon arriving back at the house, it was after 4AM and her pistol with no clip in it and accompanied by her permit was left on the hood of an unknown car.

140. As a decorated military veteran who stills continue to serve the community still has extreme memories of the event and suffers from PTSD from the manner of the way she was treated. She still struggles to this day and has severe bouts of insomnia with flashbacks of the

17

incident.

*CHUTNEY NANCE*

141. On March 19, 2020 Plaintiff Chutney Nance's home was invaded by Raleigh Police Department and SWAT and possibly other law enforcement agencies.

142. She was at Wake Medical late that evening with her minor child who suffers from autism and seizures and had asked her neighbor Plaintiff Shonta Arnold to watch her other two kids while she took her child in for seizures.

143. After being discharged Ms. Arnold called to tell her that was a large commotion on the street near her house and that she heard a loud commotion.

144. Upon arriving near her house, she noticed the commotion towards 5009 Royal Acres Oaks area, but she also saw her sitter at 5024 Royal Acres in the yard with several police officers restraining her.

145. Ms. Nance had to pull into her grass to get to her driveway and proceeded in the direction of her house. Officers began yelling at her asking why she was there. She told them not to shoot as her daughter was in the car and that she lived there.

146. Ms. Nance was highly distressed as she had two other children in the house during the course of the commotion in front of her house with the police and SWAT teams present.

147. She asked the police officers not to kick her door in because her children were in the house and they proceeded to tell her that that they had probable cause to come into her house as some men had been apprehended in her yard from a house down the street and they needed to search her fence and backyard and inside the home to make sure no one was inside or had thrown anything over her fence.

148. Despite her requests not to involve her children the police constantly slammed doors and

18

yelled at her autistic child things that she will never forget. She provided the police with the code to open the door, but they still entered her home forcefully.

149. They came into the house and destroyed her personal property, flipping over furniture and wrecking the house.

150. The police chocked up her son in the corner by his shirt and her daughter was placed on the ground beside him with both of them scared to death, crying asking for their mother, Ms. Nance.

151. The police eventually put the children in a room together while Ms. Nance spoke to the police about why they were in the house.

152. They indicated that the warrant indicated her house was vacant and there was evidence of drugs in the living room in the ashtray next to a couch and tv left on gave them the suspicion that it was a drug house.

153. The police still would not let her back into the home where her children were located and pushed her back into the yard searching her without a female officer present.

154. Upon leaving the house, Detective Abdullah apologized and said that they thought the home was part of a drug bust and was empty but the house was not empty and not a drug house.

155. This event left Ms. Nance and her 3 minor children traumatized over the manner and treatment received by Detectives Abdullah and Monroe and the rest of the police officers.

156. Each and every one of the Defendants had a statutory duty to the public, statutory duties that they have violated with respect to the Plaintiffs. These duties include but are not limited to, the duties contained in 42 U.S.C. §§ 1983 1985, and in N.C. Gen. Stat.§ 14-30, and § 160A, *et seq.*

157. Upon information and belief the negative treatment of the Plaintiffs by the Defendants was

19

the result of racial profiling, racial animus and/or personal malice towards the Plaintiffs as African Americans. The Plaintiffs have constitutional protections (including but not limited to those enunciated in the 4th, 5th and 14th Amendments to the United States Constitution, and Article I § 19 of the North Carolina Constitution), for equal protection under the law, and against illegal searches and seizures and deprivations of liberty and property without due process, or except in accordance with the law of the land, which were violated by the defendants when they illegally detained assaulted, handcuffed, strip searched and arrested the Plaintiffs without just or probable cause to believe that the Plaintiffs had committed any violation of the law.

158. Defendants acted carelessly, recklessly and in conscious disregard of the known rights of the Plaintiffs as citizens and were grossly negligent and completely indifferent to their rights and safety by attacking detaining and falsely imprisoning the Plaintiffs for no valid reason other than the color of their skin.

159. At all relevant times, Defendants Abdullah and Monroe were acting individually and intentionally as well as in the course and scope of their duties as agents and employees of Defendant City of Raleigh (Raleigh Police Department). As such, Defendants Abdullah and Monroe's actions are imputed to Defendant City of Raleigh which is responsible for the official policies or customs that encourage its police officers and detectives to treat African American citizens more harshly than Caucasian or White Citizens. The official policies or customs Defendant City of Raleigh caused the deprivation of the Plaintiffs' rights.

160. Defendant City of Raleigh further ratified and condoned the misconduct of Defendants Abdullah and Monroe and is directly and vicariously liable for participation in the actions and egregious wrongs alleged against Plaintiffs.

161. Defendants committed wrongful acts against Plaintiffs intentionally and without excuse

20

or just cause, and in reckless disregard Constitution and laws of the United States and of the State of North Carolina, including the 4th, 5th, 13th, and 14th Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983 1985, and 2000(a), and the North Carolina Constitution, Article I § 19, proceeding recklessly in disregard of the rights of others, including Plaintiffs, solely to advance their own ulterior purposes.

162. This action seeks damages on behalf of Plaintiffs for the loss of liberty, extraordinary emotional pain and suffering, and injuries to their person, that Plaintiffs were forced to endure as a consequence of Defendants' decidedly wrongful acts.

163. Plaintiffs have suffered and continue to suffer severe and ongoing damages, specifically including lost educational and professional opportunities, physical pain and injuries, inadequate medical care, serious psychological and emotional damage, loss of familial relationships, and loss of quality of life.

164. The acts and omissions of Defendants entitle Plaintiffs to compensatory and punitive damages.

**FIRST CAUSE OF ACTION**
**CIVIL LIABILITY FOR ACTS OF TERROR**
**N.C. GEN. STAT. §1-539.2D**

165. The allegations in the prior Paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

166. Plaintiffs bring this Claim pursuant to N.C. Gen. Stat. §1-539.2D for civil liability for acts of terror against all Defendants for violation of this statute.

167. The use of force by Defendant City of Raleigh by its police officers on the Plaintiffs in this case fulfilled all of the requirements outlined in the statute in question.

168. First, the act of terror must be an activity that involves violent acts or acts dangerous to human life that violate federal or state law.

169. The actions of the Defendant City of Raleigh by and through its agents and policy of

21

illegally targeting African American citizens by conducting raids on personal residents constituted extreme and outrageous conduct.

170. Second, the activity appears to be intended to intimidate or coerce of civilian population.

171. Clearly in this case, the actions of the Defendant City of Raleigh by its police officers through its use of excessive force in its attack on the residence of the Plaintiffs and its subsequent strip searches and other oppressive acts clearly demonstrated an acti to intimidate the Plaintiffs.

172. The third prong of the analysis states that the action occurs primarily in this State, meaning North Carolina.

173. As noted, these actions complained of in this action took place in Wake County, North Carolina.

174. Based on the application of the facts and circumstances as outlined in this Complaint the provisions of N.C. Gen. Stat. §1-539.2D have been met.

175. Therefore the Defendants should be held accountable and liable under this statute.

176. The provisions of this statute state that any persons whose property and person is injured by a terrorist may sue for and recover damages from the terrorist.

177. The provisions of this statute state that a person is entitled to recover three times the actual damages sustained or $50,000 whichever is greater, as well as all court costs and attorneys' fees in the trial and appellate courts if the person prevails in the claim.

**SECOND CAUSE OF ACTION**
**EXCESSIVE FORCE**
**42 U.S.C. § 1983 – FOURTH AMENDMENT**

22

178. The allegations in the prior Paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

179. Plaintiffs bring this Claim pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment of the United States Constitution, which applies to actions of local government and to individuals or corporate entities acting under color of state law.

180. The use of force by Defendant City of Raleigh by its police officers on members of the public should not be excessive and should be limited to instances in which there is an immediate threat to the officer or public at large.

181. When using force against members of the public, Raleigh Police Officers are only allowed to use reasonable force based upon the circumstances and facts of each occurrence.

182. The policies, usages and customs of the City of Raleigh have ratified, allowed or encouraged the usage of excessive force by its officers in circumstances where excessive force was unjustified and verbal commands and reasonable force should have been implemented.

183. Upon information and belief, Defendants Abdullah and Monroe were specifically trained by the City of Raleigh via the Raleigh Police Department to use verbal commands and reasonable force first, before escalating and using excessive, hands-on force.

184. Pursuant to their training from the City of Raleigh via the Raleigh Police Department Defendants Abdullah and Monroe specifically failed to consider the use of verbal commands and reasonable force and escalated to the use of excessive force.

185. Without even issuing a verbal order or command that the Plaintiffs were under

23

arrest, Defendants Abdullah and Monroe used excessive force when removing Plaintiffs from vehicles and houses, subduing, detaining and strip searching them.

186. Defendants based on the training, polices and customs of the City of Raleigh used excessive force in an inappropriate and excessive manner before considering a severe use of force against Plaintiffs.

187. At all times, Defendants Abdullah and Monroe were acting under color of state law in their personal capacity as detectives.

188. The City of Raleigh continues to use excessive force as an official policy or custom in an unlawful, unreasonable, and excessive manner to deprive members of the public of their Constitutional rights to be free from the threat of excessive force and unreasonable seizures.

189. As a proximate and foreseeable result of the Defendants' violations of Plaintiff's civil and constitutional rights, Plaintiffs have been caused to suffer significant harm and damage (physical financial and emotional), and are entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of ($25,000), the costs of this action and reasonable attorney's fees from Defendants pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**MALICIOUS PROSECUTION**
**42 U.S.C. § 1983**

190. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

191. Plaintiffs bring this Claim pursuant to 42 U.S.C. § 1983 for violation of rights protected

24

by the Fourth Amendment of the United States Constitution, which applies to actions of local governments and to individuals or corporate entities acting under color of state law.

192. Under 42 U.S.C. § 1983, Defendants are liable to Plaintiffs individually and in their official capacities as agents (under North Carolina law) and/or as informed officers of the City of Raleigh via its Police Department, or principles of such agents/employees/police officers, acting under color of state law.

193. Defendants Abdullah and Monroe acted under color of state law because despite knowing that probable cause did not exist to arrest and prosecute Plaintiffs, intentionally, recklessly and with malice caused Plaintiffs to be strip searched, detained, arrested, and held on bail

194. Defendants Abdullah and Monroe acted under color of state law because despite knowing that probable cause did not exist to arrest and prosecute Plaintiffs, intentionally, recklessly and with malice, knowing that they are empowered to detain free citizens under specific circumstances and in accordance with their duties as Officers and acted pursuant in wrongfully detaining, questioning, and causing the false arrest and malicious prosecution of Plaintiffs, who had committed no such wrong and as to whom no reasonable suspicion nor probable cause of unlawful conduct existed.

195. Defendants violated Plaintiffs' federal Constitutional rights including, but not limited to their right to life, liberty, property, equal protection (including the right to be free from racial discrimination), protection from unreasonable seizure and false arrest, and due process of law provisions (both procedural and substantive) under the federal and state constitutions, and/or as made applicable to the States under the 14th

25

Amendment to the U.S. Constitution.

196. Defendants violated the aforementioned constitutional protections by the acts, omissions, policies, procedures, customs, usages and/or conduct, set forth above.

197. As a proximate and foreseeable result of Defendants' violation of Plaintiffs constitutional rights, Plaintiffs' have suffered severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation, and their peace of mind have been disturbed.

198. As a proximate and foreseeable result of the Defendants' violations of Plaintiff's

199. civil and constitutional rights, Plaintiffs have been caused to suffer significant harm and damage (physical, financial, and emotional), and are entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of $25,000.00, the costs of this action and reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
## PUBLIC ENTITY LIABILITY
### 42 U.S.C. § 1983 - Fourth Amendment

200. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

201. Upon information and belief, the City of Raleigh and its decision makers, with deliberate indifference negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Plaintiffs, as well as others similarly situated, maintained, enforced tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs and usages:

202. Failure to implement protocols and train officers in the proper way to contain, treat and

26

secure persons such as the Plaintiffs who presented no threat to the officers or the public at the time of engagement; and

203. Failure to train, supervise, and control employees in the use of reasonable force and voice commands;

204. As a proximate and foreseeable result of the Defendants' violations of Plaintiff's civil and constitutional rights, Plaintiffs have been caused to suffer significant harm and damage (physical, financial, and emotional), and are entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of ($25,000), the costs of this action and reasonable attorney's fees from Defendants pursuant to 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1985
### Conspiracy to Interfere with Civil Rights

205. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

206. Upon information and belief, the Defendants agreed and acted in concert, thereby conspiring for the purpose of impeding, hindering, obstructing, or defeating, in some manner, the due course of justice in North Carolina with the intent to deny to the Plaintiffs (as members of a racial minority and United States citizens), the equal protection of the laws, and/or to injure the Plaintiffs for lawfully enforcing or attempting to enforce the Plaintiffs' civil and constitutional rights to be free from racial discrimination, unlawful detention and seizure, the unlawful and excessive use of violent force, and entitlement to the equal protection of the laws (including to peaceably assemble, and not be singled out on account of race), all in violation of

27

42 U.S.C. § 1985.

207. Based on Defendants Abdullah and Monroe's discussions with each other, Defendants then jointly, and in furtherance of their unlawful agreement and conspiracy, detained the Plaintiffs and caused them to be interrogated, attacked, physically injured, restrained and arrested without probable cause or reasonable suspicion of Plaintiffs having engaged in any criminal act.

208. As a proximate and foreseeable result of Defendants' conspiracy to violate the Plaintiffs' constitutional rights, and acts taken in furtherance of said unlawful conspiracy, Plaintiffs' have suffered a loss of liberty, physical injury, severe emotional distress severe mental anguish and anxiety, depression, embarrassment, humiliation, damage to their reputation, and their peace of mind has been disturbed.

209. As a proximate and foreseeable result of the Defendants' conspiracy to violate of Plaintiffs' civil and constitutional rights, Plaintiffs have been caused to suffer significant harm and damage (physical, financial, and emotional) and is entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of ($25,000), the costs of this action and reasonable attorney s fees from Defendants pursuant to 42 U.S.C. § 1985.

**SIXTH CAUSE OF ACTION**
**State Law Claim: Assault & Battery**

210. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

211. Defendants by the afore stated intentional acts (pulling Plaintiffs from vehicles,

28

restraining them on the ground, and subjecting them to strip searches) and displays of excessive force and unnecessary violence threatened and caused Plaintiffs bodily injury and restricted their freedom of movement.

212. Defendants wrongful accusations of criminal activity, intimidation and threats of personal injury and/or arrest, accompanied by the aforesaid acts or displays to carry out the threats, caused Plaintiffs to be afraid and a reasonable apprehension that harmful offensive contact with their person was imminent.

213. Defendants Abdullah and Monroe individually and on behalf of their employers, the City of Raleigh, intentionally caused bodily contact by grabbing, pulling, assaulting and strip searching the Plaintiffs without consent was offensive and harmful to Plaintiffs.

214. As a result of Defendants' assault and battery, Plaintiffs have been injured and damaged and is entitled to recover compensatory damages in an amount believed to be in excess of ($25,000).

### SEVENTH CAUSE OF ACTION
### State Law Claim: False Imprisonment/False Arrest

215. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

216. Defendants by and through its agents Detectives Abdullah and Monroe intentionally and unlawfully detained and interrogated Plaintiffs, knowing that there was no probable cause or reasonable suspicion to question them or to have them detained or arrested, and such detention was therefore, unlawful.

217. Defendants by and through its agents Detectives Abdullah and Monroe individually and on

29

behalf of their employers, City of Raleigh prevented Plaintiffs from leaving by forcefully subduing them without consent, then causing them to be apprehended and strip searched and eventually arrested and interrogated against their will and without counsel. Such attack was offensive and harmful to Plaintiffs.

218. Defendants committed wrongful acts against Plaintiffs, intentionally and without excuse or just cause, and in reckless disregard of North Carolina law, proceeding recklessly in disregard of the rights of others solely to advance Defendants' ulterior purposes.

219. As a result of Defendants' false imprisonment, false arrests and unlawful detention Plaintiffs have been injured and damaged in an amount believed to exceed ($25,000).

## EIGHT CAUSE OF ACTION
### Conspiracy to Violate and Violations of the North Carolina Constitution

220. The allegations in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

221. Plaintiffs assert this cause of action in the alternative, to the extent that Plaintiffs may be found to have no other adequate remedy at law, thus entitling Plaintiffs to prosecute this civil action directly under the North Carolina Constitution.

222. To the extent, sovereign immunity or another form of immunity operates to effectively bar the availability of a full and adequate remedy with respect to any federal or common law claims Plaintiffs may have against Defendants in their official or individual capacities, Plaintiffs assert a cause of action directly under the North Carolina Constitution against Defendants in their official capacities under color of state law.

30

223. The actions of Defendants as set forth herein violated the rights guaranteed to Plaintiff under the North Carolina Constitution as follows:

224. Article 1 Section 19, the right to be free from deprivation of life, liberty, property or privilege; and equal protection under the law.

225. Article I, Section 20, the right to be free from unreasonable search and seizure.

226. Article I, Section 21, the right to be free from unlawful restraints upon personal liberty.

227. Article I, Sections 35 and 36, the retention of rights necessary to guarantee and preserve the blessings of liberty.

228. Defendants violated the aforementioned constitutional protections by those actions and conduct described hereinabove.

229. Defendants intentionally acted, combined and conspired to deprive Plaintiffs of their constitutional rights to the equal protection of the laws; Defendants subjected Plaintiffs to discrimination by the State, through its duly authorized law enforcement officials because of Plaintiffs race or color; Defendants further subjected Plaintiffs to an unlawful search and seizure under the laws of the State of North Carolina, depriving them of their liberty and freedom contrary to the law of the land. By virtue of the foregoing conduct, Defendants denied Plaintiffs their rights, privileges and immunities under the laws of the State of North Carolina and the North Carolina Constitution.

230. Defendants undertook the aforementioned acts or steps both directly and by means of a conspiracy with duly constituted law enforcement officials, in abuse of certain powers and authorities strictly delegated to law enforcement officers under North

31

Carolina law and in furtherance of an unlawful agreement to violate Plaintiffs' rights; Defendants actually engaged in the deprivation of Plaintiffs' rights, privileges and immunities secured by the laws and Constitution of the State of North Carolina under color of state law by means of false or misleading reports and/or statements to law enforcement officials, and/or by their unlawful conduct all to the damage or detriment of Plaintiffs.

231. In addition to any compensatory and/or punitive damages to which Plaintiffs may be entitled as a proximate result of the wrongful and unlawful acts of Defendants, Plaintiffs are further entitled to equitable and relief in the form of mandatory and/or prohibitory injunctions to curtail and prevent Defendants unlawful and unconstitutional practices and conduct towards Plaintiffs and other African American citizens a prohibition against continuing racial discrimination by the improper profiling or discriminatory confrontation of African American citizens by Defendants.

232. By failing to provide adequate training to Defendants Abdullah and Monroe with regard to the rights guaranteed by the North Carolina Constitution.

233. By failing to have adequate policies and procedures in place for policing and monitoring officers like Defendants Abdullah and Monroe in their dealings with members of the public, such that the City engaged in reckless indifference to whether wrongful conduct occurred.

234. Defendant City of Raleigh is liable for the violation of Plaintiffs' rights under North Carolina Constitution because Defendants Abdullah and Monroe were acting in their official capacity as Raleigh Police Department officers during some or all of the tortious conduct.

32

235. As a proximate and foreseeable result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have suffered a loss of liberty, physical injury, scarring and, severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation, loss of reputation, and their peace of mind has been disturbed.

236. As a proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs are entitled to compensatory damages for the injuries and damages caused by Defendants constitutionally violative misconduct in an amount believed to be in excess of 25,000, and are further entitled to injunctive, prohibitive declaratory and all other equitable relief available.

237. Plaintiffs are entitled to compensatory damages for the injuries and damage caused by Defendants' constitutionally violative misconduct in an amount believed to be in excess of ($25,000), and is further entitled to injunctive, prohibitive, declaratory and all other equitable relief available.

238. Defendants' actions were done maliciously, willfully or wantonly or in a manner that demonstrates a reckless disregard for Plaintiffs' rights. As a result of Defendants' conduct, Plaintiffs are entitled to recover punitive damages (as allowed by common law and/or consistent with Chapter 1-D of North Carolina General Statutes) in an amount to be determined at trial.

239. Pursuant to 42 U.S.C. § 1985, Plaintiff 1s entitled to recover reasonable attorney's fees from Defendants.

**NINTH CAUSE OF ACTION**
**Negligent Hiring, Training, Supervision and Retention**

33

240. The allegations in the preceding are re-alleged and incorporated by reference as if fully set forth herein.

241. Upon information and belief, Defendant City of Raleigh by and through its agent Raleigh Police Department failed to properly screen applicants for positions involving public safety and officers and detectives and/or failed to properly train and supervise said personnel (specifically including, but not limited to the individual Defendants Abdullah and Monroe, while authorizing and encouraging them to confront, detain, search and arrest members of the public, including the Plaintiffs in the flagrant abuse of Constitutional and North Carolina law.

242. Further, Defendant City of Raleigh by and through its agent Raleigh Police Department knew or should have known of the inadequacy of the training, and of the Defendants Abdullah and Monroe and their individual inability to properly execute their duties as law enforcement officers. Nonetheless, Defendant City of Raleigh retained the services of employees including Defendants Abdullah and Monroe and exposed the public, specifically Plaintiffs, to the actions of said employees.

243. Upon information and belief, Defendant City of Raleigh failed to properly screen applicants for positions involving law enforcement and/or failed to properly train and supervise said personnel (specifically including but not limited to the individual Defendants Abdullah and Monroe), while authorizing and encouraging them to confront, detain, search and arrest members of the public, including Plaintiffs, in flagrant abuse of the Constitution and laws of the State of North Carolina.

244. Further, Defendant City of Raleigh knew or should have known of the inadequacy of the training, and of the Defendants Abdullah and Monroe' inability to properly

34

execute their duties involving the investigation and arrest of Plaintiffs. Nonetheless, Defendant City retained the services of Defendants Abdullah and Monroe and exposed the public, specifically Plaintiffs, to the actions of said employees.

245. As a result of Defendants' negligence in hiring, training supervising, and retaining the individual Defendants, the Plaintiffs were injured and damaged and is entitled to compensatory damages in an amount believed to be in excess of ($25 000).

## TENTH CAUSE OF ACTION
## CLAIM FOR PUNITIVE DAMAGES

246. The allegations in the preceding are re-alleged and incorporated by reference as if fully set forth herein.

247. Defendants' conduct toward the Plaintiffs was malicious, willful, and wanton.

248. Defendants have acted out of a sense of personal ill will toward African American citizens and the Plaintiffs activated or incited the Defendants to perform the acts or undertake the conduct that resulted in harm to the Plaintiffs.

249. Defendants egregiously wrongful willful and wanton conduct displays a conscious and intentional disregard of, and indifference to the rights and safety of others, including Plaintiffs, which the Defendants knew or should have known was reasonably likely to result in injury, damage or other harm, and which did result in harm to the Plaintiffs.

250. Defendants Abdullah and Monroe and the City of Raleigh as well, participated in or condoned the egregiously wrongful, malicious, willful and wanton conduct of the individual Defendants.

251. As a result of egregiously wrongful conduct, Defendants are subject to the imposition

of punitive damages in such amounts as may be awarded by a jury, under the common law, statutory and Constitutional laws of the State of North Carolina, and pursuant to N.C. Gen. Stat.§ 10-1, *et seq.*

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment for them and order relief as follows:

1. Compensatory damages against all Defendants, jointly and severally;

2. Punitive damages against the individual defendants, jointly and severally;

3. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

4. To find the Defendants guilty of violating N.C.G.S. § 1-529.2D to held civilly liable for acts of terror perpetrated against the Plaintiffs in this case and make an award pursuant to the provisions of this statute; and

5. Entry of permanent injunction on a finding that Defendants have violated Plaintiffs' rights under 42 U.S.C. §1983, 42 U.S.C. §1985 and North Carolina state law;

6. That the Court grant any other and further relief it deems equitable and just.

Respectfully submitted this 19th day of March 2025

THE MONTGOMERY LAW FIRM, PLLC

36

BY:    /s/Eric A. Montgomery
ERIC A. MONTGOMERY, NC Bar No. 38951
*Attorney for Plaintiffs*
6135 Park South Drive, Suite 510
Charlotte, North Carolina 28210
Telephone:    (704) 749-3135
Facsimile:    (704) 228-7157
Email:         Eric@theMLawFirm.com

37